SHARP, Judge,
dissenting.
I respectfully dissent. In this case there was an unequal division of marital assets accumulated by the work efforts of the spouses, and the record fails to establish any equitable reason for a unequal division.[1] We have upheld such unequal divisions where the court also awarded rehabilitative or permanent alimony.[2] But no periodic alimony was awarded here, even though there was a large gap in the incomes earned by the parties at the time of the dissolution hearing.[3]
In 1975, the Pralles moved to Florida. Since that time Robert has worked for his uncles’ construction company, McCarthy Builders, Inc. Cynthia worked throughout the marriage, and, in fact, was hired by McCarthy Builders in 1977 as a secretary. Although Cynthia presently works for McCarthy Builders, she is working toward fulfilling the prerequisites to enter a nurses training program. Cynthia testified the actual nursing program lasts two years, during which time she will be unable to work. She expects to earn between $12,-000.00 and $15,000.00 annually as a nurse.
Substantially' all of parties’ marital assets were acquired during the marriage. The trial court divided the major assets as follows:
[[Image here]]
*457 [[Image here]]
On appeal, Robert asserts that his partnership interests were acquired as a gift from his uncles; however, this assertion is directly contradicted by most of his own testimony. Robert testified he built the marital residence with his uncles for a very low cost; the Tymber Creek rental house was acquired through money saved from bonuses; the interest in the Lakefront property was purchased with money earned from bonuses; and the interest in Volusia Builders Supply Company, Inc. was purchased with approximately $15,000.00 earned from working and bonuses. Although the Tomoka Meadows Association interest was given to him as an incentive to work on it, Robert also testified it was acquired through his own work and know-how. Robert further testified he has not invested any money in the Pier 43 partnership, and the pension and profit sharing plan has been in effect since he turned twenty-five. There was no testimony as to how he acquired an interest in the Sawtooth partnership.
“While the concept of ‘equitable distribution’ has not been held to require an absolutely equal division of the marital assets, this court has indicated that is a good starting point, see Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).” Ente v. Ente, 442 So.2d 232 (Fla. 5th DCA 1983). In this case, the parties had nothing when they were married at sixteen, but, through the years, have acquired assets totaling at least $260,000.00. In this situation, a division that awards approximately sixty-two percent (62%) of those assets to Robert, and only thirty-eight percent (38%) to Cynthia, seems grossly out of balance.
I would reverse because I think the trial court abused its discretion in either failing to award some periodic alimony to the wife or achieving a more equitable division of the marital assets.

. The trial court's division of the marital assets left the ex-wife with a little under $100,000.00, and the ex-husband at plus $160,000.00.

. See Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).

. The ex-wife earned $150.00 a week as a secretary. The ex-husband drew a weekly salary of $400.00; his firm contributed to a pension and profit sharing plan in his name; he took a fifteen percent share of any bonus money taken out of the firm by his uncles; he was a partner in several individual construction projects in which McCarthy Builders is involved; and he had a twenty-five percent interest in Volusia Builders Supply, Inc., a closed corporation, set up to sell windows and related supplies to McCarthy Builders and other contractors.